CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 25 2013

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JEFFREY COLEMAN, )  | Civil Action No. 7:11cv00518 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| JOHN JABE *et al.*, ) | |
| ) | By: Samuel G. Wilson |
| Defendants. ) | United States District Judge |

Plaintiff Jeffrey Coleman, a Virginia inmate proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 *et seq.* ("RLUIPA"), against the Virginia Department of Corrections ("VDOC") and a group of VDOC employees for damages, injunctive relief, and declaratory relief to redress a number of alleged wrongs related to Coleman's religious practices. Coleman's claims originally came to the court in the form of a 115-page, 909-paragraph complaint against twenty-two named defendants and an indeterminate number of "unknown members of the faith review committee." After reviewing Coleman's original complaint, the court ordered him to file an amended complaint that complied with Federal Rule of Civil Procedure 8(a). Coleman's thirty-three page amended complaint, though shorter than his original complaint,[1] contains ten groups of claims grounded on an array of statutory and constitutional provisions, conservatively[2] totaling sixty-one distinct alleged violations of the law, each of which is tied to particular

---

[1] Coleman named fewer defendants in his amended complaint. The remaining defendants are VDOC itself; Harold Clarke, Director of VDOC; John Jabe, Deputy Director of VDOC; Robert Bivens, VDOC Regional Ombudsman; Louis B. Cei, the head of the VDOC Faith Review Committee; unknown members of the Faith Review Committee; Stanley Young, Warden of Pocahontas State Correctional Center ("PSCC"); Catherine Turner, Human Rights Advocate at PSCC; K.S. Richardson, chaplain at PSCC; and Dave Hammond, treatment program supervisor at PSCC.

[2] Despite the language here, the court liberally construes Coleman's claims. See Beaudett v. City of Hampton, 775 F.2d 1274, 1277–78 (4th Cir. 1985).

injunctive relief, declaratory relief, damages, or some combination of the three. In response, the defendants filed a thirty-five-page motion for summary judgment with seventy-five pages of affidavits and other exhibits, and the court referred the matter to United States Magistrate Judge Pamela Meade Sargent for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge has filed a thorough, eighty-four-page report recommending that the court grant the defendants' motion for summary judgment on many of Coleman's claims. Coleman has filed a lengthy objection to the Report and Recommendation in which he makes repetitive and often frivolous arguments regarding each of the report's findings and conclusions. See, e.g., Objections 4, ECF No. 57 ("I specifically object to every extension of immunity to any defendant because it violates the sovereign will of the people of Virginia that our servants are amenable to us at all times."). Having reviewed the Report and Recommendation, the objections thereto, and pertinent portions of the record *de novo* in accordance with § 636(b)(1), the court overrules Coleman's objections, reiterates portions of the Report and Recommendation, and adopts it in part.

## I.

Unsurprisingly, VDOC has implemented policies and procedures that place certain restrictions on its inmates' behavior. For instance, VDOC policy allows inmates to possess up to twelve compact discs, but, in the interests of security and cost containment, requires that inmates purchase all their religious non-music compact discs from Jones Express Music ("JEM").[3] Similarly, VDOC policy allows inmates to possess one, one-ounce bottle of nonflammable "prayer oil" at any given time, but requires that inmates purchase the prayer oil from Keefe

---

[3] JEM is a small, Virginia-based mail-order music company. If an inmate wants a particular compact disc that JEM does not offer, the inmate may order the compact disc through his facility's chaplain or institutional management. Those compact discs are then available for check-out from the chaplain or from the library.

2

Commissary. Another VDOC policy requires inmates to keep their pant legs rolled down below their ankles and not tucked in to their socks or shoes. And, under VDOC policy at the time Coleman filed this action, inmates could not grow beards unless doing so was a medical necessity. (VDOC has since altered its grooming policy, and inmates may now grow beards up to one-quarter of an inch in length.)

VDOC also imposes policies directly related to inmates' religious practices. Under VDOC policy, Virginia correctional facilities serve the Common Fare diet to inmates who have special religious dietary needs. The Common Fare diet is designed to meet the nutritional and religious needs of a wide variety of religious groups, including Muslims and Jews. See Madison v. Virginia, 474 F.3d 118, 123 (4th Cir. 2006); Acoolla v. Angelone, No. 7:01-cv-01008, 2006 WL 938731, at *4 (W.D. Va. Sept. 1, 2006). Prior to 2008, that diet supplied Common Fare participants with kosher meat three times a week. VDOC has since replaced those servings with soy-protein-based entrees, which reduced the cost of the Common Fare diet from an average of $6.00 per offender, per day, to $3.10 per day—closer to the $2.00 cost of the regular inmate diet. (The Common Fare diet also includes protein in the form of eggs, tuna, and peanut butter.) In another example, VDOC policy restricts inmates from praying in the "pod" common area. Inmates may, however, conduct religious study in the pod area, so long as no more than five inmates sit at any one table and the activity is strictly religious, conducted quietly, and does not include sermonizing or prayer. Instead of praying in the pod, inmates are allowed to pray in their cells, during their weekly religious meetings, or in groups in the recreation yard.

To facilitate inmates' religious practices, VDOC facilities employ "a facility Chaplain or volunteer Chaplain who [serves] as an advocate for equitable accommodation of all religious faiths." Aff. 7, ECF No. 38-5. Because the "Constitution of Virginia prohibits the use of

General Fund revenues to support religion . . . [,] Chaplains are employed by the Chaplain Service of the Churches of Virginia, Inc. or are volunteers." Id. Chaplain Service of the Churches of Virginia, Inc., in turn, subcontracts with Muslim Chaplain Services to "provide formal Muslim worship, religious education, pastoral counseling and VDOC approved materials" (such as Qur'ans), and other general support. Aff. 2–3, ECF No. 38-1. VDOC funds these services from the proceeds of purchases that inmates, prison employees, and prison visitors make at the commissary, which make up the "commissary fund."

The chaplain at Coleman's former residence, Pocahontas State Correctional Center ("PSCC"), is Chaplain Richardson. Coleman claims that Richardson favors Christian inmates at PSCC, that he prints Internet articles for most religious groups but not for Muslims, that he refuses to establish a "discretionary fund,"[4] that he refuses to solicit religious materials for Muslim inmates, that he refuses to appoint Coleman as the "liaison" for the Muslim inmates at PSCC, that he has retaliated against Coleman for filing grievances against him, and that he scheduled Eid-ul-Adha prayer in a room with pictures on the wall. Coleman makes similar claims against VDOC's Faith Review Committee and its head, Louis Cei. He claims that Cei and the Faith Review Committee recognize many distinct groups of Protestants but refuse to recognize Salafi Muslims as a distinct group, and refuse to authorize the Fast of Ashura as a Muslim holy day.

Coleman's many complaints have led to his extensive interaction with VDOC grievance procedures and the employees who handle inmate grievances, and those interactions have led to claims here. Coleman claims that defendants Turner, Bivens, Hammond, Ward, and Young have

---

[4] According to VDOC operating procedure, the discretionary fund is "authorized, but not required, at each facility." Aff. 14, ECF No. 38-5. If a facility establishes a discretionary fund, inmates may contribute to it, and the chaplain may use contributed funds to purchase books, study materials, community faith objects, musical instruments, and the like. Id.

4

interfered in various ways with Coleman's attempts to exhaust his administrative remedies, that he has been overcharged for copies, and that his grievances have resulted in prison officials refusing to give him a job in the law library (despite, presumably, the job qualifications resulting from Coleman's years of litigation experience in the federal courts).

Coleman filed his complaint on November 2, 2011, while he was housed at PSCC. VDOC has since transferred Coleman to Augusta Correctional Center ("ACC") in Craigsville, Virginia. Coleman claims that he is a "sincere, practicing, Salafi Muslim."

## II.

Several of Coleman's claims for injunctive and declaratory relief are moot. As with all cases presented for federal-court adjudication, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." White Tail Park, Inc. v. Stroube, 413 F.3d 451, 457 (4th Cir. 2005). A case is moot if "'changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief.'" Incumaa v. Ozmint, 507 F.3d 281, 286 (4th Cir. 2007) (quoting Whiting v. Krassner, 391 F.3d 540, 545 (3d Cir. 2004)). In this case, VDOC has transferred Coleman from PSCC to ACC. Consequently, his claims for injunctive and declaratory relief against the PSCC defendants (Young, Turner, Richardson, and Hammond) are moot because any such order the court imposed on those defendants would have no effect on Coleman. Likewise, VDOC has recently instituted a policy that allows inmates to grow beards up to one-quarter of an inch in length, essentially giving Coleman the grooming-policy relief he seeks here. Accordingly, the court dismisses as moot

Coleman's claims for injunctive and declaratory relief against the PSCC defendants, and Coleman's claims for injunctive and declaratory relief relating to VDOC's grooming policy.[5]

## III.

Coleman seeks some combination of nominal, compensatory, and punitive damages against every defendant in that defendant's official capacity. Neither RLUIPA nor § 1983 authorize such relief, and the court grants the defendants' motion for summary judgment on Coleman's official-capacity claims for damages.

"RLUIPA does not authorize claims for money damages against an official who is sued in her official capacity." Rendelman v. Rouse, 569 F.3d 182, 187 (4th Cir. 2009) (citing Madison v. Virginia, 474 F.3d 421, 429 n.4 (4th Cir. 2007)). Likewise, "[s]tate officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983." Arizonans for Official English v. Arizona, 520 U.S. 43, 69 n.24 (1997) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). The same is true for state agencies like VDOC. See Cromer v. Brown, 88 F.3d 1315, 1332 (4th Cir. 1996). Accordingly, the court grants the defendants' motion for summary judgment on Coleman's claims for official-capacity damages.

## IV.

Coleman also seeks some combination of nominal, compensatory, and punitive damages against every individual defendant in that defendant's individual capacity. The court finds that qualified immunity bars Coleman's claims for damages against the defendants in their individual capacities, and grants the defendants' motion for summary judgment on those claims.

---

[5] The court notes that, despite ample opportunity to do so, the defendants did not inform the court of VDOC's new grooming policy, and the court only learned of it from Coleman's January 31, 2013 motion for partial summary judgment.
  In his motion for summary judgment (which is not presently before the court), Coleman mentions that VDOC's new grooming policy is immaterial because he wants to grow a half-inch beard rather than a quarter-inch beard. However, none of Coleman's pleadings plausibly show that being his being restricted to a quarter-inch beard impinges on his religious exercise or any other constitutional or statutory right. Therefore, VDOC's new grooming policy moots the controversy as pled.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The inquiry is twofold: a court should determine whether any right was violated and also whether that right was clearly established at the time of the alleged violation. See Miller v. Prince George's Cnty., 475 F.3d 621, 626–27 (4th Cir. 2007). A court conducts the "latter inquiry by determining whether a reasonable officer would have understood that his conduct violated the asserted right." Id. at 627. The court may exercise discretion in deciding which of the two prongs to address first. See Pearson v. Callahan, 555 U.S. 223, 236, 237–45 (2009) (holding as such and explaining that this approach eliminates the need for courts to address difficult and "essentially academic" constitutional questions).

Public officials are not liable for making "bad guesses in gray areas," Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992), and there are appreciably fewer analytical bright lines in the prison context, where the law gives prison officials some latitude, and the decision-making process permits the balancing of various interests, see Benson v. Allphin, 786 F.2d 268, 276 (7th Cir. 1986) (noting that a constitutional rule "involving the balancing of competing interests" is "so fact dependent that the 'law' can rarely be considered 'clearly established'") (superseded on other grounds by amendment to the Federal Rules of Civil Procedure); see also Ridpath v. Bd. of Governors of Marshall Univ., 447 F.3d 292, 320 (4th Cir. 2006) (recognizing, in the context of First Amendment speech, the difficulty of finding a clearly established right because interest-balancing is part of the analysis); Torbeck v. Zoon, No. 96-1962, 1997 WL

532496, at *2 (4th Cir. August 29, 1997) (table decision) (recognizing the same in the context of procedural due process).

Here, the court discerns no particularized violations of any clearly established rights of which a reasonable official would have known. Coleman claims that the individual defendants owe him damages because he sincerely believes that he must obtain religious recordings so that that he can learn Islam, but that he cannot obtain those recordings from a company like JEM, who also sells music; he sincerely believes that he must apply prayer oil every time he prays but that he cannot obtain the oil from Keefe Commissary, which also sells "swine and idols," and that the one-bottle limit means he might run out before he can resupply; he sincerely believes that he must grow a beard; he sincerely believes that he must not let his pants hang below ankles; he sincerely believes that he must consume a *halal*-certified diet that includes *halal* meat; he sincerely believes that he must pray in congregation five times each day if three or more Muslims are present, which means VDOC must allow him to pray in the prison's pod area along with other Muslims; VDOC may not lawfully employ Protestant chaplains; Chaplain Richardson refuses to establish a discretionary fund, recognize Coleman as the Muslim liaison, inconsistently supplies religious groups with religious materials, and scheduled Eid-ul-Adha prayer in a room with pictures on the wall; Cei and the Faith Review Committee will not recognize Salafi Muslims as a distinct sect of the Muslim prison population and will not authorize the Fast of Ashura as a Muslim holy day; and the Pocahontas defendants retaliated against him by refusing to give him a job in the law library and interfered with his access to the courts by incorrectly deeming some of his grievances untimely or nongrievable and attempting to overcharge him for copies. Prison officials are not liable for making "bad guesses in gray areas." Maciariello, 973 F2d at 298. Rather, they are liable for violating a clearly established statutory or constitutional

right of which a reasonable officer would have known. Discerning no such violations here, the court finds that the individual defendants are entitled to qualified immunity and grants their motion for summary judgment as to Coleman's individual-capacity damages claims against them.[6]

## V.

With those claims stripped away, only Coleman's official- and individual-capacity RLUIPA and § 1983 claims for injunctive and declaratory relief regarding the compact-disc policy, the prayer-oil policy, the dress code, the *halal*-diet policy[7] (or lack thereof), the prayer-in-the-pod policy, the chaplain policy, the Salafism policy, and the Fast of Ashura policy remain. The Magistrate Judge's Report and Recommendation addressed each of those claims and recommended that the court grant summary judgment on all claims except for Coleman's First Amendment and RLUIPA claims regarding the Fast of Ashura, and Coleman's RLUIPA claims regarding the compact-disc policy, the prayer-oil policy (only as it relates to purchasing the oil from Keefe Commissary), the *halal*-diet policy, and the Salafism policy. The court overrules

---

[6] The most facially viable of these claims is Coleman's *halal*-diet claim, but a review of the case law indicates that any such right is far from clearly established. See, e.g., Watkins v. Shabazz, 180 Fed. App'x 773 (9th Cir. 2009) (holding that a state prisoner failed to prove a violation of the First Amendment by prison's refusal to serve *halal* meat); Pratt v. Corrections Corp. of Am., 267 Fed. App'x 482 (8th Cir. 2008) (affirming the lower court's grant of summary judgment for the defendants on the ground that plaintiff inmate had failed to show a substantial burden); Williams v. Morton, 343 F.3d 212, 215–16 (3d Cir. 2003) (finding no First Amendment violation for failure to provide *halal* meat); Malik v. Sabree, C.A. No. 8:06-319-RBH, 2007 WL 781 640 (D.S.C. Mar. 13, 2007) (explaining that the plaintiff had not shown a substantial burden from the prison's failure to serve *halal* meat); Hudson v. Maloney, 326 F. Supp. 2d 206, 211 (D. Mass. 2004) (finding no First Amendment violation for failure to provide *halal* meat); Abdul–Malik v. Goord, No. 96 CIV. 1021(DLC), 1997 WL 83402, at *7–8 (S.D.N.Y. Feb. 27, 1997) (finding, after a bench trial, that a Muslim inmate's rights were not violated by the prison's failure to provide *halal* meat three times a week).

[7] The defendants point out that in Via v. Wilhelm, 7:11cv00050, 2011 WL 5419709 (W.D. Va. Nov. 9, 2011), this court found that the Via defendants (a group of VDOC employees) had shown that providing the Common Fare diet rather than a diet with *halal* meat was the least restrictive means of furthering the compelling government interest of cost control. However, since Via v. Wilhelm, the Fourth Circuit has published its opinion in Couch v. Jabe, 679 F.3d 197 (4th Cir. 2012), which details how defendants are to establish that a particular policy is the *least restrictive* approach to furthering a compelling government interest. The defendants have offered no evidence (and in fact no argument) that their policy is the least restrictive alternative.

Coleman's objections and adopts the Report and Recommendation on all of those claims, except for the Magistrate Judge's conclusion regarding the Fast of Ashura. Because Coleman has failed to plead the requisite facts in support of that claim, the court dismisses it pursuant to 28 U.S.C. § 1915(e)(2).

Section 1915(e) of Title 28 mandates that in proceedings *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." Under the pleading standards outlined in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009), "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. at 678 (quoting Twombly, 550 U.S. at 555).

Here, despite Coleman's lengthy amended complaint, he has failed to offer facts regarding his Fast of Ashura claim other than two lines in one paragraph: "Lou Cei and the FRC have violated Coleman's 1st Amendment right by not authorizing the Fast of Ashura." At worst, Coleman's allegations are just the sort of "labels and conclusions" that Twombly and Iqbal sought to foreclose. At best, Coleman's allegations regarding the Fast of Ashura merely enhance the plausibility of his Salafism claim. Accordingly, the court dismisses Coleman's Fast of Ashura claim pursuant to § 1915(e)(2).[8]

## VI.

For the reasons stated, the court dismisses or grants summary judgment on all of Coleman's claims except for his RLUIPA claims for injunctive and declaratory relief regarding

---

[8] In this claim (and most of his others), Coleman "incorporates by reference" his original, unwieldy, 115-page, 909-paragraph complaint, in an apparent effort to subvert the court's order to amend that complaint such that it complied with the Federal Rules of Civil Procedure. Even if the court were to entertain Coleman's efforts, Coleman's original complaint does little to establish his Fast of Ashura claim as anything more than a component of his Salafism claim.

the compact-disc policy, the prayer-oil policy (only as it relates to purchasing the oil from Keefe Commissary), the *halal*-diet policy, and the Salafism policy.[9]

**ENTER**: March 25, 2013.

_____
UNITED STATES DISTRICT JUDGE

---

[9] Coleman's only remaining claims to relief are equitable in nature. See Skippy, Inc. v. CPC Int'l, Inc., 674 F.2d 209, 215 (4th Cir. 1982) ("The district court properly dismissed Skippy, Inc.'s claims for damages leaving only claims for injunctive relief. In this posture the case presented issues purely equitable in nature that could be resolved by the court without empaneling a jury."); see also Leary v. Daeschner, 349 F.3d 888, 909–11 (6th Cir. 2003) (discussing the right to a jury trial on claims for injunctive and declaratory relief).
   The court notes that questions of fact remain on the issues of whether the defendants have substantially burdened Coleman's religious exercise, and whether Coleman sincerely holds his religious beliefs.